USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 10 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Chris Clarke and Timothy Peterson,

        Plaintiffs,

—v—

Upwork Global, Inc.,

        Defendant.

17-CV-560 (AJN)

MEMORANDUM & ORDER

---

ALISON J. NATHAN, District Judge:

Plaintiffs Chris Clarke and Timothy Peterson (together, "Plaintiffs") bring this diversity action against Defendant Upwork Global, Inc. ("Upwork"), seeking declaratory and injunctive relief precluding Upwork's further prosecution of certain claims asserted against Plaintiffs in an ongoing JAMS arbitration proceeding, reference number 1110019847, pending in California before the Honorable Richard J. McAdams (Ret.) (the "Arbitration"). Before the Court is Plaintiffs' motion for an order preliminarily enjoining Upwork from pursuing such claims and generally from taking any further action with respect to Plaintiffs in the Arbitration during the pendency of this lawsuit. For the reasons set forth below, Plaintiffs' motion is DENIED.[1]

## I. Background

### A. Factual Background

The facts pertinent to the instant motion are substantially undisputed. Upwork operates a website that allows businesses and self-employed professionals to find and contract with one

---

[1] This Memorandum and Order constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rules of Civil Procedure 52 and 65. Any findings at this stage "are not binding at a trial on the merits." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992).

1

another directly for various services and to invoice and pay for such services through pre-funded escrow accounts. Declaration of Kimberly L. Owens, Dkt. No. 8-1 ("Owens Dec."), ¶ 2. Through its website, Upwork offers certain premium solutions to larger enterprise clients, including "Upwork Enterprise" services. *Id.* ¶ 3. A company that purchases Upwork Enterprise services receives, among other things, a private portal accessible to the company and its authorized users, the ability to apply standard terms and requirements across multiple contractual engagements, an option to consolidate invoicing across engagements, and an option to obtain "Enterprise Billing" services by which Upwork advances payment to the company's contractual partners and then invoices the company for reimbursement of these payments on a monthly basis. *Id.* ¶¶ 3-4.

At all times relevant to this action, Plaintiffs were employed as officers of the CHR Group ("CHR"), a marketing services firm, with Clarke serving as Executive Vice President of Corporate Development and Mergers and Acquisitions and Peterson serving as Vice President, Digital.[2] On December 15, 2015, Upwork entered into a contract with CHR's subsidiary, Studio One Networks, Inc. ("Studio One"), by which Studio One purchased one year's worth of Upwork Enterprise and Enterprise Billing services (the "Enterprise Agreement"). Owens Dec. ¶ 5 & Ex. A ¶¶ 2-3, 6-7; Clarke Dec. ¶ 5; Peterson Dec. ¶ 5. The Enterprise Agreement explicitly incorporates by reference certain defined "Terms of Service," including a "User Agreement," available electronically through Upwork's website. Owens Dec. ¶¶ 5-6, 10 & Ex. A ¶ 1.

---

[2] *See* Declaration of Chris Clarke in Support of Plaintiffs Chris Clarke and Timothy Peterson's Motion for Preliminary Injunction ("Clarke Dec.") ¶ 2; Declaration of Timothy Peterson in Support of Plaintiffs Chris Clarke and Timothy Peterson's Motion for Preliminary Injunction ("Peterson Dec.") ¶ 2.

Peterson and Clarke each registered as users of Studio One's account with Upwork, on or around January 6, 2016 and April 15, 2016, respectively. Owens Dec. ¶ 12; Clarke Dec. ¶ 5; Peterson Dec. ¶ 5. In order to register as an authorized user of a preexisting enterprise account, one is required to complete an electronic form on Upwork's website that calls for at least basic personal information, such as full name and e-mail address, and also to affirmatively check an electronic box confirming the following statement: "**Yes, I understand and agree to the Upwork Terms of Service, including the User Agreement and Privacy Policy.**" Owens Dec. ¶¶ 6-9. The words "Upwork Terms of Service," "User Agreement," and "Privacy Policy," as set forth in the foregoing statement as it appears on Upwork's website, are hyperlinks to electronic versions of the referenced documents. Owens Dec. ¶ 10.

Several provisions of Upwork's User Agreement are relevant to this action. The User Agreement's preamble states, among other things:

> **This User Agreement (this 'Agreement') is a contract between you ('you' or 'User') and Upwork Global, Inc. ('Upwork', 'we', or 'us') and, to the extent expressly stated in this Agreement, our Affiliates Elance Escrow Corporation ('EEC') and Elance Limited. You must read, agree to, and accept all of terms and conditions contained in this Agreement in order to use our website located at www.upwork.com (http://www.upwork.com)**
> . . . .

Owens Dec. Ex. B at 1. The preamble further provides:

> **YOU UNDERSTAND THAT BY USING THE SITE OR SITE SERVICES AFTER THE EFFECTIVE DATE, YOU AGREE TO BE BOUND BY THIS AGREEMENT, INCLUDING THE MANDATORY BINDING ARBITRATION AND CLASS ACTION/JURY TRIAL WAIVER PROVISION IN SECTION 21.4. . . . IF YOU AGREE TO THIS AGREEMENT ON BEHALF OF AN ENTITY, OR IN CONNECTION WITH PROVIDING OR RECEIVING SERVICES ON BEHALF OF AN ENTITY OR AGENCY, YOU REPRESENT AND WARRANT THAT YOU HAVE THE AUTHORITY TO BIND THAT ENTITY OR AGENCY TO THIS AGREEEMENT. IN**

> THAT EVENT, 'YOU' AND 'YOUR' WILL REFER AND
> APPLY TO THAT ENTITY OR AGENCY.

*Id.* at 2 (capitalization in original). The referenced arbitration provision in turn states, among other things:

> **This Mandatory Binding Arbitration and Class Action/Jury Waiver provision ('Arbitration Provision') applies to all Users except Users located outside of the United States and its territories.**
>
> **In the unlikely event that parties are unable to resolve a Claim within 60 days of the receipt of the applicable Notice, you, Upwork, and our Affiliates agree to resolve the Claim by binding arbitration before an arbitrator from JAMS.**

*Id.* § 21.4. It further provides:

> **This Arbitration Provision is the full and complete agreement relating to the formal resolution of Claims. For the avoidance of doubt, this Arbitration Provision covers, and the arbitrator shall have exclusive jurisdiction to decide, all disputes arising out of or relating to the interpretation, enforcement, or application of this Arbitration Provision, including the enforceability, revocability, scope, or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an arbitrator and not by a court. The parties expressly agree that the arbitrator and not a court will decide any question of whether the parties agreed to arbitrate, including but not limited to any claim that all or part of this Agreement is void or voidable.**

*Id.* § 21.4.B. The arbitration provision also includes an opt-out clause, which provides in relevant part: "You may opt out of the foregoing arbitration . . . provision of this Agreement by notifying Upwork in writing within 30 days of the date you first registered for the Site." *Id.* § 21.4.D.

In approximately the spring of 2016, Upwork "became concerned" about certain dispersals of Upwork funds to contractors through Studio One's account, and certain actions taken on Upwork's platform by Peterson and Clarke in particular. Owns Dec. ¶¶ 15-17. On

September 7, 2016, Upwork filed a formal Demand for Arbitration, naming as respondents Studio One, CHR, Clarke, and Peterson. It alleged that Studio One and/or CHR – purportedly Studio One's alter ego – had encountered financial difficulty and that respondents were (i) improperly using Upwork's online platform and funds to satisfy outstanding payment obligations incurred for services contracted for and received *outside* of the Upwork platform and, frequently, *prior* to the execution of the Enterprise Agreement, and (ii) failing to timely pay Upwork invoices. *See* Declaration of Bill Frimel, Dkt. No. 8-2 ("Frimel Dec."), Ex. A ¶¶ 7, 15, 27-34; Ex. F at 2. Upwork asserted nine claims, including, as relevant here, claims against Clarke and/or Peterson for breach of the User Agreement, conversion, promissory fraud, and fraudulent concealment. Frimel Dec. Ex. A ¶¶ 37-94. Upwork served Clarke and Peterson with the demand on September 7 and 26, 2016, respectively. Frimel Dec. ¶¶ 3-4 & Ex. B.

JAMS issued a Commencement of Arbitration Notice on September 12, 2016, and Justice McAdams was appointed arbitrator pursuant to a September 23, 2016 Appointment of Arbitrator notice. Frimel Dec. Ex. F at 2. Justice McAdams scheduled an initial arbitration management conference for October 28, 2016, and, on October 23, 2016, he e-mailed counsel for Upwork and Plaintiff Clarke to share a proposed agenda for the October 28 conference. Frimel Dec. ¶¶ 6, 8 & Ex. D. The agenda included "Identifying the basis for arbitration" as its second item. *Id.* Ex. D. Clarke acknowledged receipt of the agenda and indicated that he would "review and prepare" for the conference. Frimel Dec. Ex. E.

Clarke appeared at the October 28 conference before Justice McAdams and expressly stated that he represented all respondents, including Peterson. Frimel Dec. ¶ 9 & Ex. F at 1. During the conference, Justice McAdams identified Section 21 of the User Agreement (the mandatory arbitration provision) as the basis for arbitration, and Clarke specifically represented

5

that neither he nor Plaintiff Peterson objected to arbitration of the claims asserted against them. Frimel Dec. ¶ 10. Moreover, either Clarke or another representative of the respondents present at the conference advised Justice McAdams that the respondents would not contest the "responsibility and liability on the part of the corporate entity [r]espondents, as separate and distinct and from the named individual [r]espondents." Frimel Dec. Ex. K at 1.

Following the October 28 conference, Justice McAdams issued a Report of Preliminary Conference and Arbitration Management Conference Order No. 1 (the "First Arbitration Order"). *See* Frimel Dec. Ex. 2F. Among other things, the First Arbitration Order – which clearly listed Plaintiffs Clarke and Peterson among the respondents and Plaintiff Clarke as one of three representatives for the respondents – expressly identified Section 21 of the User Agreement as the basis for arbitration. *Id.* at 1-2. It also explicitly stated that the "[t]he claims are arbitrable" and that "[r]espondents generally deny all claims," and ordered the parties to procced with discovery, noting their "agree[ment] to cooperate in good faith in the voluntary and informal exchange of information pursuant to [JAMS rules]." *Id.* at 2-3. Further, it invoked JAMS' expedited procedures pursuant to language in Upwork's User Agreement and set an Arbitration hearing for March 27, 2017 with a March 13, 2017 deadline for the submission of pre-hearing materials and briefs. *Id.* at 3-4. Finally, it scheduled an interim case management conference for February 14, 2017, and noted the parties' agreement to service of documents and orders by e-mail. *Id.* at 4.

The Arbitration respondents, including Clarke and Peterson, participated in discovery in November and December 2016, at least to some extent. Largely through Peter Clark (the Chief Executive Officer of CHR and another representative of record for the respondents), the respondents traded correspondence with Upwork regarding the timing of their responses to

Upwork's requests for production of documents and to Upwork's requests to depose Clarke and Peterson. Frimel Dec. ¶¶ 12-14, 17-18 & Exs. G-I, L-O, Q. Plaintiffs Clarke and Peterson were copied on much, if not, all of that correspondence. *Id.*

On December 7, 2016, Justice McAdams convened – at Upwork's request – a second case management conference to discuss respondents' failure to timely produce documents and the parties' inability to negotiate a stipulation to memorialize respondents' agreement not to contest the liability of the corporate respondents. Frimel Dec. Exs. J, K at 1-2. Respondents appeared through representative Peter Clark. *Id.* Ex. K at 1. During the conference, the parties reached agreements as to an amended schedule for document production and a deadline by which respondents would accept or reject stipulations proposed by Upwork. *Id.* at 1-2. The Arbitration hearing date would remain unchanged. *Id.* at 2. In an order issued followed the conference, Justice McAdams noted that respondents, having to that point proceeded without counsel, had expressed a "potential need" for legal representation. *Id.* In the weeks following the December 7 conference, respondents reiterated to Upwork on at least one occasion that they were considering engaging counsel, but apparently did not do so. Frimel Dec. Ex. L.

Respondents finally produced documents to Upwork, including documents from Clarke's and Peterson's e-mail accounts, during the final ten days of December 2016. Frimel Dec. ¶¶ 18, 20 & Exs. M-O, Q. Clarke, at least, participated personally in portions of the document collection process, according to e-mail correspondence from Peter Clark. Frimel Dec. Ex. Q. As of at least December 19, 2016, respondents – again through Peter Clark – represented in e-mail correspondence that they were still trying to schedule deposition dates for Clarke and Peterson in the following month. Frimel Dec. ¶ 17 & Ex. L. There is no indication that such depositions ever took place. On December 22, 2016, Justice McAdams granted Upwork's request to file a

motion for summary disposition, with no objection from respondents. Frimel Dec. ¶ 19 & Ex. P. Clarke and Peterson were copied on Upwork's e-mail request. Frimel Dec. ¶ 19.

Nothing in the record suggests that Clarke or Peterson protested the arbitrability of Upwork's claims against them at any point during these proceedings or sought to assert any defense premised on Justice McAdams' purported lack of jurisdiction.

### B. Procedural History

On January 24, 2017, Clarke and Peterson, having now retained counsel, requested that Upwork voluntarily dismiss them from the Arbitration. Upwork refused.[3] The following day, on verbal notice to Upwork, Plaintiffs initiated the instant action and hand-delivered to the undersigned's Chambers a motion for a preliminary injunction and temporary restraining order, as well as a proposed order to show cause that would enjoin pursuit of Upwork's Arbitration claims against Plaintiffs pending resolution of Plaintiffs' motion. *See* Dkt. No. 3. The Court, aware of no basis to proceed *ex parte*, ordered Plaintiffs to serve Upwork with copies of their summons and complaint, motion papers, and proposed order to show cause, and scheduled a teleconference with all parties for January 27, 2017. *Id.*

During the January 27 teleconference, the parties consented to entry of Plaintiffs' proposed order to show cause substantially as submitted, including its temporary injunctive provisions, and agreed to a briefing schedule on Plaintiffs' motion for a preliminary injunction. Dkt. No. 7. Following briefing, the parties advised the Court by joint letter dated February 27, 2017 that neither requested an evidentiary hearing or oral argument, and expressly waived their right to the former. Dkt. No. 14. The Court deemed Plaintiffs' motion fully submitted upon its receipt of that letter.

---

[3] *See* Declaration of Adam J. Gana in Support of Plaintiffs Chris Clarke and Timothy Peterson's Motion for Preliminary Injunction ("Gana Dec") ¶ 6.

## II. Discussion

### A. Preliminary Injunction Standards

"A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Id.* (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).

When, however, a party seeks a so-called "mandatory injunction" – that is, an injunction that "alter[s] the status quo by commanding some positive act" – rather than the "typical" prohibitory injunction, which "seeks only to maintain the status quo pending a trial on the merits," a heightened standard applies. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (citing, *inter alia*, *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Indeed, a mandatory injunction "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Id.* (quoting *Abdul Wali*, 754 F.2d at 1025); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011) (noting that the "burden is even higher on a party . . . that seeks a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo") (internal quotation marks omitted). At least one court in this District has concluded that granting a preliminary injunction that would, as here, "in effect disrupt" ongoing arbitration proceedings and thereby "alter the status quo" would be "akin to [issuing] a

mandatory injunction," and that the injunction application should therefore be subject to the corresponding heighted standard. *522 W. 38th St. N.Y. LLC v. N.Y. Hotel & Motel Trades Council*, 517 F. Supp. 2d 687, 688 n.1 (S.D.N.Y. 2007).

Regardless of the applicable standard, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. "The party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clearing showing,' that the necessary elements are satisfied." *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 451-52 (S.D.N.Y. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). And "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987)).

### B. Plaintiffs Fail to Carry Their Burden of Persuasion on Both the Likelihood of Success on the Merits and the Balance of the Equities

Plaintiffs' claims are predicated on the central contention that they may not be compelled to arbitrate Upwork's claims against them because, quite simply, they are not parties – in their individual capacities – to any contractual agreement to arbitrate. *See* Complaint for Declaratory and Injunctive Relief ("Comp.") ¶¶ 1-4, 25-30; Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction ("Br.") at 1-2, 8-10. To the extent, Plaintiffs argue, that they assented to the terms of Upwork's User Agreement, including its mandatory arbitration provision, by electronically checking the relevant box in the course of registering to use Studio One's Upwork account, they did so solely as "corporate and administrative representatives" of Studio One and CHR, and therefore they are not personally bound to that Agreement. Br. at 8-10; Clarke Dec. ¶ 5; Peterson Dec. ¶ 5. That position comports, according to Plaintiffs, with the plain language of the User Agreement's preamble, which provides, as noted, that "[i]f you agree

10

to this agreement on behalf of an entity, or in connection with providing or receiving services on behalf of an entity or agency . . . . 'you' and 'your' will refer and apply to that entity or agency." Owens Dec. Ex. B at 2 (capitalization omitted); *see also* Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Preliminary Injunction, Dkt. No. 10 ("Reply"), at 3-4.

Defendants press several arguments in opposition but contend first and foremost that, regardless of the contractual language, Plaintiffs' participation in – and express declination to object to – the Arbitration has effectuated a waiver of their right to seek the relief requested here.[4] The Court agrees.

It is as a general matter true that, under the Federal Arbitration Act,[5] "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Still, it is well-settled that even when a party has not *expressly* agreed to submit a dispute to arbitration, an agreement to arbitrate "'may be *implied* from [a] party's conduct.'" *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) (emphasis added) (quoting *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991)). "In other words, if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration." *Opals on Ice*, 320 F.3d at 368 (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 685 (2d Cir. 1996)); *see also Sands Bros. & Co. Ltd. v. Zipper*, 03-cv-7731, 2003 WL 22439789, at *1 (S.D.N.Y. Oct. 27, 2003) ("[C]ourts have

---

[4] *See* Defendant Upwork's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt. No. 8 ("Opp."), at 9-11.

[5] *See* 9 U.S.C. § 1 *et seq.* The parties appear to agree that federal law governs the question of waiver, and the Court will assume so for purposes of this motion.

11

repeatedly held that a party, through its conduct, may waive its right to object to going forward with an arbitration even if not contractually bound to do so."). Indeed, the Court of Appeals has specifically recognized "assumption" as one of the "five theories" under which "nonsignatories may be bound to the arbitration agreements of others," noting that even "[i]n the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-77 (2d Cir. 1995).

Relying on these principles, several courts in this District have denied motions to stay or enjoin ongoing arbitration proceedings – including applications predicated on the movant's purported lack of assent to an arbitration agreement – based on the plaintiff's participation in the relevant proceeding. In *Merrill Lynch & Co., Inc. v. Optibase, Ltd.*, for example, Judge Swain concluded that a plaintiff seeking a preliminary injunction had likely failed to preserve its objection to arbitration because, after initially asserting a jurisdictional defense in answer to the defendant's arbitration claim, it then proceeded to participate in merits-related discovery and motion practice before the arbitrator and waited until approximately a month before the arbitration hearing was scheduled to begin to seek judicial relief. 03-cv-4191, 2003 WL 21507322, at *3-5 (S.D.N.Y. Jun. 30, 2003). Likewise, in *Sands Bros.*, Judge Marrero deemed objections to arbitration waived because the plaintiff, after "giv[ing] every indication that it intended to proceed with the arbitration," sought an injunction approximately three weeks before the scheduled hearing, after the "arbitration panel ha[d] been selected," "discovery ha[d] occurred," and defendant "ha[d] incurred substantial expenses preparing for the arbitration." 2003 WL 22439789, at *3.

Plaintiffs in this case appeared, either in person or through a representative, at at least two Arbitration conferences before a designated arbitrator. At one such conference, Plaintiff Clarke *expressly advised* Justice McAdams that Plaintiffs *did not object* to arbitration of the claims against them, agreed to expedited proceedings, and consented to entry of a discovery schedule and a hearing date. Following that conference, Justice McAdams issued a written order concluding that the claims were arbitrable. Plaintiffs then participated in discovery, collecting and producing e-mails and working to schedule depositions. Despite being copied on much or all of the parties' Arbitration-related e-mail correspondence, Plaintiffs declined to raise any jurisdiction-related objections to discovery requests or, later, to Upwork's request to file a dispositive motion. They did not seek an adjournment of any conference or hearing date. Indeed, on the record before the Court, Plaintiffs waited until late January 2017 – nearly five months after Upwork filed its arbitration demand, two months before the arbitration hearing under the parties' expedited schedule, and with Upwork's dispositive motion forthcoming – to first contest arbitrability in any way.

Under the circumstances, and bracketing the question of whether Plaintiffs *expressly* bound themselves to the User Agreement's arbitration provision by affirmatively "agree[ing] to" and "accept[ing]" the Agreement's terms and conditions, the Court finds it likely that Plaintiffs have at least *impliedly* agreed to arbitrate Upwork's claims against them and have waived their rights to object to proceeding with the Arbitration. It therefore cannot conclude that Plaintiffs are likely to succeed on the merits of their claims here, regardless of whether the usual or the heightened standard applies to their injunction application.

Seeking to avoid this result, Plaintiffs, unsurprisingly, characterize their participation in the Arbitration as minimal and argue that it is insufficient to support a finding of waiver. Reply

13

at 5-6. It may be true that many of the decisions in this Circuit deeming objections to arbitration waived did involve somewhat more extensive involvement in the arbitration proceeding by the objecting party than is evident on the part of Plaintiffs here – participation in argument on the merits, for example. *See, e.g., Testamentary Trust Under Article Seventh of the Last Will and Testament of Walter H. Jones v. Watts Inv. Co.*, 99-cv-10590, 2000 WL 546490, *4 (S.D.N.Y. May 3, 2000). On the other hand, *all* of the authorities relied upon by Plaintiffs for the proposition that a party may retain viable objections to an arbitration proceeding notwithstanding some level of participation in that proceeding turn in significant part on the relevant party making its resistance to arbitration expressly known early and often, whether by formal objection, motion practice, or otherwise. *See, e.g., Herman Miller, Inc. v. Worth Capital Inc.*, 173 F.3d 844, 1999 WL 132183, at *1 (2d Cir. 1999) (Summary Order) ("from the outset," plaintiff seeking stay of arbitration "repeatedly reserved the right to contest the existence of an agreement to arbitrate"); *Penrod Mgmt. Grp. v. Stewart's Mobile Concepts, Ltd.*, 07-cv-10649, 2008 WL 463720, at *1, 3 (S.D.N.Y. Feb. 19, 2008) (plaintiff filed motion to dismiss with arbitrator arguing that arbitrator lacked jurisdiction because plaintiff was not a party to the arbitration agreement); *cf. Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, S.E.I.U., AFL-CIO*, 788 F.2d 894, 897-99 (2d Cir. 1986) (parties seeking to permanently enjoin series of arbitrations repeatedly responded to arbitration notices by requesting that hearings be delayed and then obtaining *ex parte* stay orders in state court). Plaintiffs, by contrast, not only failed to dispute arbitrability or to raise any jurisdictional objection for almost five of the seven scheduled months of Arbitration proceedings, they *expressly confirmed* to Justice McAdams that they did **_not_** object to Upwork's claims against them being resolved in the Arbitration. Plaintiffs identify no authority, and the Court is aware

of none, for enjoining an ongoing arbitration under such circumstances. *Cf. IPayment, Inc. v. 1st Americard, Inc.*, 15-cv-1904, 2016 WL 1544736, at *4 (S.D.N.Y. Mar. 25, 2016) (while "'[p]articipating in the arbitration hearings in order to resolve the question of arbitrability itself' does not constitute waiver of a party's objection to the arbitration," "[f]ailing to maintain an objection to the arbitrator's jurisdiction" and "participating beyond disputing arbitrability, such as engaging in discovery, testifying, and submitting papers on the merits of the underlying dispute[] may evidence waiver") (quoting *Opals on Ice*, 320 F.3d at 369).

For these reasons, the Court concludes that Plaintiffs fail to carry their burden of persuasion to demonstrate a likelihood of success on the merits under either the general standard applicable to prohibitory injunctions or the heightened standard applicable to mandatory injunctions.

And even if Plaintiffs could satisfy that requirement, they still fail to persuade the Court that the equities weigh in their favor. As discussed, Plaintiffs eschewed nearly half a year's worth of opportunities to object to the Arbitration. During that time, Upwork expended resources prosecuting its claims through outside counsel, pursuing discovery, engaging in correspondence with its adversaries and JAMS, scheduling and appearing at conferences, and preparing dispositive motion papers. To now, on Plaintiffs' belated application, require Upwork to pursue those claims, which are based on substantially similar (if not identical) underlying factual predicates, in a disjointed manner in two separate fora would be to impose unjustified hardship. *See, e.g., Optibase*, 2003 WL 21507322, at *5 (balance of hardships did not tip in plaintiff's favor when it sought, at a "late hour," to enjoin upcoming arbitration of a subset of defendant's claims that were "largely intertwined" factually with its arbitrable claims). That constitutes an independent basis for denial of Plaintiffs' motion.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED. The Court will schedule an initial pretrial conference by separate order.

The parties are directed to ECF file any papers submitted in connection with the motion resolved herein that do not yet appear on the public docket within 3 business days of this Order.

SO ORDERED.

Dated: May 10, 2017
      New York, New York

_____
ALISON J. NATHAN
United States District Judge